IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DANIEL CURTIS JOHNSON                                         PETITIONER

v.                         NO. 5:18-cv-00079 DPM/PSH

WENDY KELLEY, Director of the                                 RESPONDENT
Arkansas Department of Correction

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

The record reflects that petitioner Daniel Curtis Johnson ("Johnson") was tried for the death of Vincent Stone ("Stone"), who was shot at or near a basketball court in a park in Blytheville, Arkansas. The Arkansas Supreme Court summarized some of the evidence as follows:

> … Blytheville Police Officer, Carl Lee Treadway, testified that on the day of the incident, he responded to a 911 call that shots had been fired at Williams Park. Officer Treadway testified that he had driven through the park minutes before receiving the call and estimated that approximately 80 people were present, enjoying the park and playing basketball. The State called Jimmy Aldridge, Jr., and Chardrick Mitchell as witnesses. Both men testified that they were playing basketball at the park with Stone on the day of the incident and a large group of people were at the park. Aldridge and Mitchell also testified that after they finished their game and were leaving the basketball court with Stone, two men came up from behind Stone and shot Stone multiple times. Aldridge and Mitchell both identified Johnson at trial as one of the assailants.

See Johnson v. State, 2017 Ark. 106, 515 S.W.3d 116, 117 (2017). A jury convicted Johnson of first-degree murder and found that he used a firearm in the commission of the offense. He was sentenced to "life imprisonment and fifteen years' imprisonment for the firearm enhancement to run consecutively." See Id.

Johnson did not appeal his conviction. He did, though, file a motion for new trial following the discovery of a Facebook post by Jimmy Aldridge, Jr., ("Aldridge").[1] The state trial court conducted a hearing on the motion, and the state Supreme Court summarized some of the evidence as follows:

---

[1] Johnson also raised a claim with respect to a Facebook post by Chardrick Mitchell. The state Supreme Court found that Johnson abandoned the claim on appeal and, for that reason, did not summarize any of the evidence relevant to the claim.

> ... Johnson's sister, Latrice Johnson, testified that approximately two weeks after Johnson's trial, an anonymous person sent Latrice a Facebook post made by Aldridge regarding Stone's murder, which she shared with defense counsel. Latrice testified that the Facebook post was made on June 28, 2015, six days after the shooting, and she confirmed the Facebook post by checking Aldridge's Facebook page. The post stated in its entirety:
>
>> Real niggas cry! Got me crying like a baby! Lost my nigga right in front of me! Couldn't do shit!! It was to [sic] many people out there for nobody to see anything!! My nigga can't rest in peace until justice is served!! 6/22/15 real nigga holiday!!!
>
> At the hearing, Aldridge testified that his Facebook post was consistent with his trial testimony regarding witnessing the shooting and in his identification of Johnson as the shooter. ...

See Id., 515 S.W.3d at 118-119. The state trial court found that Aldridge's Facebook post did not "in any fashion establish or suggest perjury on any material issue at trial" nor did the post constitute "persuasive impeachment evidence." See Id. at 120. The state trial court therefore denied the motion.

Johnson appealed the denial of his motion for new trial. The state Supreme Court found no reversible error and affirmed. The state Supreme Court adopted the reasoning of the state trial court and found that Aldridge's Facebook post "would not have impacted the outcome of [the] case." See Id. at 121. The state Supreme Court additionally noted that although the post "could have possibly been used to attempt to impeach Aldridge," the post did not satisfy the standard for newly discovered evidence. See Id.

Johnson did not thereafter seek post-conviction relief or otherwise mount a collateral attack upon his conviction. Specifically, he never filed a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37.

Johnson began the case at bar by filing a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. A summary of his claims is not easy.[2] Liberally construing his petition, he appeared to allege the following:

Claim 1. The state trial court accepted a felony information that was not signed or verified by the duly elected prosecuting attorney.

Claim 2. The prosecuting attorney failed to request leave of court prior to filing an amended felony information.

Claim 3. The felony information did not notify Johnson of the exact nature of the charge against him and made no mention of accomplice liability.

Claim 4. The prosecuting attorney presented false testimony.

Claim 5. Johnson was not informed of his post-trial rights, specifically, his right to appeal his conviction and his right to pursue collateral relief.

Claim 6. He was denied effective assistance of counsel in the following respects:

    (a) his attorneys failed to investigate and discover that the duly elected prosecuting attorney did not sign the information;

    (b) Johnson's attorneys failed to object to the information as it did not inform him of the exact nature of the charge against him and made no mention of accomplice liability;

    (c) his attorneys failed to object when the state trial court did not inform Johnson of the exact nature of the charge against him and made no mention of accomplice liability;

---

[2] Johnson's petition and its accompanying attachments are approximately 426 pages long. The portion of the petition containing his claims is approximately sixty pages long. See Docket Entry 1 at CM/ECF 5-65. Kelley has attempted a summary of Johnson's claims. See Docket Entry 15 at CM/ECF 5-8. The undersigned's summary is slightly different than that offered by Kelley and is made in the hope of setting forth the claims in a more organized fashion.

4

(d) his attorneys failed to offer a viable defense and failed to make a motion for a directed verdict at the close of the evidence;

(e) his attorneys failed to conduct a proper investigation, which would have exposed the prosecuting attorney's use of false testimony during the trial;

(f) his attorneys failed to object to the prosecuting attorney's use of expert testimony;

(g) his attorneys failed to retain and call expert witnesses in Johnson's defense; and

(h) his attorneys failed to object to misstatements of fact during the prosecuting attorney's closing argument.

Respondent Wendy Kelley ("Kelley") filed a response to Johnson's petition. In the response, Kelley asked that the petition be dismissed. She maintained that Johnson's claims are procedurally barred from federal court review, they are not cognizable in a proceeding pursuant to 28 U.S.C. 2254, and they are otherwise without merit and do not warrant relief.

Before giving serious consideration to Kelley's assertions, the undersigned accorded Johnson an opportunity to file a reply. Johnson was asked to explain why his petition should not be dismissed for the reasons advanced by Kelley. Johnson failed to take full advantage of that opportunity, although he did file a motion to strike Kelley's response in which he briefly addressed her assertions.[3]

---

[3] In the motion, Johnson asked that Kelley's response be stricken on the ground that it contained clearly erroneous assertions. Specifically, he objected to her assertions that his claims are not cognizable in a proceeding pursuant to 28 U.S.C. 2254 and her assertion that his petition was not brought within the one-year limitations period. The motion was denied.

Generally, the federal courts will not consider a claim if the petitioner failed to first present it to the state courts in accordance with the state's procedural rules. See Wallace v. Lockhart, 12 F.3d 823 (8th Cir. 1994). A claim not presented to the state courts can nevertheless be considered if the petitioner can show cause for his procedural default and actual prejudice or, alternatively, show that the failure to consider the claim will result in a fundamental miscarriage of justice. See Id. See also Anderson v. Kelley, --- F.Supp.2d ---, 2017 WL 1160583 (E.D.Ark. 2017) (Marshall, J.).

Here, Johnson never presented the claims at bar to the state courts of Arkansas. He did not appeal his conviction and did not seek post-conviction relief or otherwise mount a collateral attack upon his conviction. The only post-trial proceeding he filed was a motion for new trial in which he challenged a Facebook post by Aldridge. Johnson did not raise that claim in this petition. Thus, he has procedurally defaulted the claims at bar, and the only question is whether his procedural default can be excused.

Liberally construing Johnson's pro se pleadings, he maintains that his procedural default should be excused because the state trial court never informed him of his post-trial rights, specifically, his right to appeal his conviction and his right to pursue collateral relief. His assertion is unavailing in this instance for two reasons. First, the state trial court informed Johnson of his right to appeal his conviction. See Docket Entry 1 at CM/ECF 390-391. Second, the undersigned knows of no support for the proposition that a state trial court must inform a defendant of his right to pursue collateral relief. In fact, "there is no constitutional right to collaterally attack a final judgment of conviction in the first place." See Shoemate v. Norris, 2003 WL 23989923 at 4 (E.D. Ark. 2003) (Wilson, J.), aff'd, 390 F.3d 595 (8th Cir. 2004).

Johnson also maintains that his procedural default should be excused because he received ineffective assistance of counsel. His assertion is unavailing in this instance for three reasons. First, before ineffective assistance of counsel can be used to establish cause for a default, ineffective assistance of counsel must first be presented to the state courts as an independent Sixth Amendment claim. See Lane v. Kelley, 2017 WL 5473925 (E.D.Ark. 2017) (Ray, M.J.), report and recommendation adopted, 2017 WL 6542748 (E.D.Ark. 2017) (Marshall, J.). Johnson never presented ineffective assistance of counsel to the state courts of Arkansas as an independent Sixth Amendment claim, and he cannot now use ineffective assistance of counsel to establish cause for a default.

Second, notwithstanding the foregoing, the circumstance in which ineffective assistance of counsel can be used to establish cause for a procedural default is quite limited. In Martinez v. Ryan, 566 U.S. 1 (2012), the United States Supreme Court held that ineffective assistance of post-conviction counsel can excuse the default of a "substantial claim of ineffective assistance of counsel at trial." See Id. at 17. Martinez can therefore excuse the default of a claim of ineffective assistance of trial counsel but cannot excuse the default of any other claim. See Dansby v. Hobbs, 766 F.3d 809 (8th Cir. 2014), cert. denied sub nom., Dansby v. Kelley, --- U.S. ---, 136 S.Ct. 297, 193 L.Ed.2d 46 (2015) (Martinez cannot excuse default of claim of ineffective assistance of appellate counsel).[4] Given the limited holding in Martinez, ineffective assistance of counsel cannot excuse Johnson's default of claims of a flawed felony information, trial court error, and prosecutorial misconduct.

---

[4] See also Lane v. Kelley, supra, (Martinez cannot excuse default of claims of trial error or ineffective assistance of direct-appeal counsel); Robinson v. Kelley, 2015 WL 4944130 (E.D.Ark. 2015) (Ray, M.J.), report and recommendation adopted, 2015 WL 4943588 (E.D.Ark. 2015) (Miller, J.) (Martinez cannot excuse default of claims of prosecutorial misconduct and trial court error).

7

Third, Johnson advances several claims challenging his trial attorneys' representation, and argues Martinez can excuse the procedural default of those claims. In this instance, though, Martinez cannot excuse the default. "Federal district courts in Arkansas have consistently held that a habeas petitioner … must, at a minimum, initiate a 'state collateral review proceeding' by filing a Rule 37 petition with the state trial court before he can rely on Martinez to excuse his procedural default." See Lane v. Kelley, 2017 WL 5473925 at 4.[5] Here, Johnson never sought post-conviction relief or otherwise mounted a collateral attack upon his conviction and thus never accorded the state courts of Arkansas an opportunity to address the claims at bar. His failure to file a Rule 37 petition prevents him from relying on Martinez to excuse the default of his ineffective assistance of trial counsel claims.

Liberally construing Johnson's pleadings, he appears to maintain that the failure to consider the claims at bar will result in a fundamental miscarriage of justice because he is actually innocent. Although not true cause for a procedural default, a showing of actual innocence can serve as a gateway through which a petitioner can obtain federal court review of procedurally barred claims. See Schlup v. Delo, 513 U.S. 298 (1995). The petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. See Id. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable

---

[5]    See also Travis v. Kelley, 2017 WL 4295258 (E.D. Ark. Sept. 5, 2017), recommendation adopted, 2017 WL 4295197 (E.D. Ark. Sept. 27, 2017); Willis v. Kelley, 2017 WL 906979 (W.D. Ark. Feb. 17, 2017), recommendation adopted, 2017 WL 901899 (W.D. Ark. Mar. 7, 2017); McCullough v. Kelley, 2016 WL 1039521 (E.D. Ark. Feb. 25, 2016), recommendation adopted, 2016 WL 1047369 (E.D. Ark. Mar. 15, 2016). The reason for the rule is that Martinez is premised on cause involving there being "no counsel" or "ineffective" counsel at the state collateral review stage. See Lane v. Kelley, 2017 WL 5473925 at 4 [quoting Dansby v. Hobbs, 766 F.3d at 834.] "Absent a state collateral review proceeding, the 'cause' for the equitable exception ceases to exist." See Id.

juror would have convicted him in the light of the new evidence." See Id. at 327. Here, Johnson has failed to make the requisite showing as he has not offered "new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." See Abdi v. Hatch, 450 F.3d 334, 338 (2006). He knew or should have known at the time of his trial of the evidence he now relies upon to support his assertion of actual innocence. For that reason, he cannot show that a fundamental miscarriage of justice will occur if his claims are not considered.

Accordingly, the undersigned finds that Johnson failed to give the state courts of Arkansas an opportunity to address the claims at bar. He cannot show cause for his procedural default, and he cannot show that a fundamental miscarriage of justice will occur if the claims are not considered. The claims are procedurally barred from federal court review. It is therefore recommended that Johnson's petition be dismissed, all requested relief be denied, and judgment be entered for Kelley. In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability should also be denied. The undersigned is not persuaded that Johnson can make a "substantial showing of the denial of a constitutional right." See 28 U.S.C. 2253(c)(2).

DATED this 15th day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE